May it please the Court, my name is Leif Johnson for the United States. The main issue in the case before you today is that the District Court suppressed evidence in this case erroneously, we believe, on the finding that there was no culpable argument to be made that the search warrant, in this case, established probable cause. Now, even if we sort of subtract this anonymous tip issue, we take it out, and even if we don't give any weight to this erroneous database inquiry that was going on, there was a consensual encounter at the defendant's apartment, and that encounter established, number one, that the card hadn't been updated and was void, and number two, that the defendant had been receiving marijuana from an outside provider. And this second finding was actually fairly significant to the case. As Detective Tuss described in his testimony at pages 82 and 83 of the record, under Montana law, a medical marijuana cardholder has to declare his source of supply. He has to either declare that he's going to grow his own, which he did in this case, or that he's going to get it from an outside source. And that particular provision of Montana law, which is 50-47-307, also says you can't get marijuana from an outside source and also grow your own. So these two allegations raised at least a fair probability that the search would reveal evidence that the defendant was in an unlawful possession of marijuana. And as I said, the second provision, or the second issue, whether he was getting marijuana from an outside source, is actually fairly significant here. Let's just say we would agree with you on the facts. I'm trying to figure out what is the probable cause in this case to do any more than search just for possession. And I was getting to that, Your Honor. If the defendant was receiving marijuana from an outside source, which he was, in violation of state law, which it appears he was. Why don't you just start from the beginning of what the police do when they went to his door, Your Honor? So the police originally got this anonymous tip that he The police didn't get an anonymous tip. The apartment manager got it and relayed it to the police. The apartment manager got an anonymous tip and then she related it to the police. Yes. She didn't know who called in, anything about that person, but she just passed it on to the police. Now, if you had just taken an anonymous tip, could that have formed a basis for probable cause? No, not by itself, Your Honor. That doesn't work too well alone. That's true. And then the police came over to see him. Well, they also know that he smoked, it was marijuana, odorless marijuana he smoked coming from there. And he did tell the police that he had a permit. Yes. And he showed it to them. And he showed it to them.  Yes. That's right. And then what happened after that? Then it became apparent to them that the card that he had showed them What happened after that? Well, they actually, they secured the apartment, they did a walkthrough for security means, and then they went and applied for a warrant with the district court judge. They didn't have probable cause to arrest him, did they, at that time? They had probable cause to believe that he was in unlawful possession of marijuana. So, yes, Your Honor. Why did they have that? Because his marijuana card at that point was void, and he had been receiving That's kind of a silly argument. They thought it was void because they didn't know what they were doing. No, they made a phone call to the wrong source. And all they got was some record of a denial. And it turned out, had they called the right source, they would have found out that he had a valid marijuana card. Your Honor, that's regarding this database inquiry that they made, which they erroneously interpreted. The database inquiry said denied. So they concluded, incorrectly, with no other information. And they had no training at all on how the marijuana laws operated in the state. And they just jumped to that conclusion. And it was a holiday, too. Yes. So all the state offices were closed. So that certainly didn't give a probable cause. But there was more. There was more, Your Honor. What was that? Well, so the card itself, on its face, didn't have his current address, and it didn't have his current provider. And the law, as it states in the search warrant, which is a legal provision, says under those circumstances the card is void. And in this case they did. And they testified to that, that they realized that at the time. And that was one of the grounds in the search warrant affidavit, two of the grounds that supported a probable cause, which were valid. And this whole idea that the defendant had a second source raised a host of issues. Who was providing the defendant marijuana when his card said he grows his own? That raised investigative issues about who it was, whether they were complying with state law. What was his answer when he was asked that question? His answer was, I haven't updated my card. I didn't know I was supposed to update it on the address. Now, I don't know that they actually questioned him on the provider, but the whole provider issue is actually fairly significant here. Because there isn't supposed to be a provider that will give him marijuana if it says on his card he's supposed to grow his own. But the best you get, after all you say, is probable cause for possession. Right. So I'm still trying to figure out how you get to going in there and try to find all this extra stuff over and above possession. Your Honor, there are some overbroad provisions in the warrant. There's at least the gun provision and there's a catch-all provision. And the district court discussed these briefly. The possession of a dangerous drug and drug paraphernalia and all that kind of stuff. Paraphernalia, it would be a separate related charge to unlawful possession. Well, I'm just trying to say, when I looked at this, I said to myself, if I look at Spilotro, this warrant is just out of it. Let me read one of them, Your Honor. One of the provisions here is documents and papers that may aid in the identification and the location of customers, suppliers, or co-conspirators. When the defendant is getting his marijuana from a source that he hasn't declared on his card, which shouldn't have been giving it to him, it raises a fair investigative issue as to who's supplying him from this outside source. It's a fair defense to his defense that he didn't intentionally possess marijuana unlawfully. And that's a system where he's going to do it. I mean, it seems to me that if I look at this particular warrant, this warrant wasn't put out to search for possession. This warrant was put out to search for trafficking. There are provisions in this warrant that are overbroad in that sense, Your Honor. And we think that those provisions can be fairly severed. And those questions really ought to be. Severed? So I've got to sever this, and you think that I can sever it down and make it valid? Is that your argument? We think that the argument is yes. We think the district court should sever those provisions. We think that that question in the first instance should be addressed to the district court. Because at the very least, the district court's reasoning that this warrant did not. Well, at this point, the district court said this warrant is out of it. I've either got to affirm or not. And it seems to me at this point I'm saying to myself, hey, look at the scope of this thing. They're not in there looking for possession. Even if I give the government every benefit of the doubt, they're looking for trafficking. They're looking for dangerous drugs, drug paraphernalia, possession without having a card that's valid. If I give you everything you've got and from somebody else except you grow on it yourself, that's best possession. That's best possession with records and information that would logically lead to sources of information that explain how he's getting this and how much he's getting. Those are logical questions that flow from this brief consensual encounter at his door. But why were they entitled to search the suitcase? Well, certainly possession of- The suitcase has all to do with trafficking. No, possession amounts of marijuana could certainly be concealed in a suitcase, Your Honor. And here again, if we're searching for possession amounts of marijuana, which this warrant does allow and should allow, probable cause creates, then the officers here did act as reasonably as they could under those circumstances because they shut it down when they realized, holy smokes, this is bigger than that. There's always- Let's go on further. In this case, I can look at the accompanying affidavit and I can kind of get this warrant carved down. The affidavit's no better than the warrant, is it? I do think it is, Your Honor. What is there? What is there in the affidavit that limits it at all? It permits seizure of dangerous drugs, including meth, cocaine, ecstasy, drug paraphernalia. And as this court has stated- Books, records, receipts, notes, ledgers, papers. If that has all to do with trafficking- Books, ledgers, notes, papers all have to do with where his source of supply was, Your Honor. And that's relevant to the question we discussed. But there are overbroad provisions. I'm not here to tell you that there aren't. But this is a case that is reasonably subject to severance on the grounds that this court has applied in the past because- This is a case that was not put together properly. And, you know, you have the magistrate, you have the district judge that heard this matter. And I don't see any reason why we should defer what they've done. And your office just did a sloppy job. At the end of the day, Your Honor, we have to tell these, you know, officers what they did wrong. And we think- How did you do that? To hold a course, teach them how to do it. Who was supervising your office? This is actually a state court warrant, Your Honor. State court. And the officers here were reacting reasonably under these circumstances when they got the second warrant, when they limited the scope of probable cause and didn't include an allegation of distribution. They had no training in any of this. I believe they did, Your Honor. I believe Tus' testimony indicates that they did. If the court has no further questions, I see my time is up. Thank you. May it please the Court, my name is Jack Sands. I'm a lawyer in Billings. I represent the defendant in this case, Howard Embry. I'm here to answer any questions that the Court may have. I do, actually. I may have a different take than my colleagues in this case. I wanted to start with the district court's analysis of the warrant in this case. The district court, as I understood, concluded that the tip was anonymous and therefore should be not considered in the analysis. Is that correct? Yes, sir. The district court cited the Bishop case for that proposition. Okay. And if I remember correctly, Bishop's is a Frank's case. And in Frank's, the analysis is, well, there's false information in an affidavit. It should be struck and not considered. That makes total sense. You're not arguing in this case that the tip was Frank's derived, correct? The tip was Frank's material, correct? No, I'm not. All right. Can you cite any case that supports the district court's use of Bishop, a Frank's case, in this context of an anonymous tip? I'm not familiar with the Bishop case, so I can't do that. I can't cite that. Well, if you look at the district court's order. I do. Why do you have that in front of you? Because I think it's, I think the district court, or maybe the magistrate, and then the district court kind of got off on the wrong track here. If you look at the district court's analysis as to why the tip could be struck. Are we talking about the district court or the magistrate? Let's go with the magistrate's order. Okay. If you look at when it's discussing why the tip can be discounted, the case the court cites is Bishop. And I'm referring to excerpts of record 213 through approximately 218, specifically 218. Why don't you go to that page? Okay. And it says on page 218, where when the statements made in an informant's tip are found to be unreliable, probable cause must be analyzed without those statements. See Bishop. Bishop is once the district court determined that the search warrant included illegally obtained information to properly purge the affidavit. Do you have any case law that would support applying Bishops here? I don't specifically. I would note, however, that there's a number of cases talking about the insufficiency of anonymous tips for establishing probable cause. So let's start there. So we can agree, I think, that the magistrate judge erred in citing Bishop. But let's look at the tip. If we look at the tip here, I understand it came through the landlord. Is that correct? Yes. And the landlord told the officers that she received this tip and told the officers that she had smelled marijuana herself coming from the apartment. Is that right? I understand that she had reported. She wasn't the landlord. She was the manager, the apartment manager. And she had reported that there had been a smell of marijuana in the apartment. But not necessarily that day. And when specifically asked if it was that day, she said no. But there had been a history of her smelling marijuana? She had smelled marijuana in the apartment. And the officers did a knock and talk. Yes. Mr. Embree acknowledged that he had marijuana in the apartment. Now, I'm not talking he didn't acknowledge trafficking levels of marijuana, but acknowledged that he had marijuana and claimed he had a card to support it, correct? Correct. And this was all before the officers went to get the warrant? Yes. So if you have the officers verifying that the defendant lives in the apartment and that the defendant smokes marijuana in the apartment both through his own admission and through the odor that the manager testified to, why is the tip uncorroborated? Because the tip said that there were a large amount, 10 pounds of marijuana delivered to the apartment the night before. And the tip indicated where it was stored. The marijuana that he showed them was a very small amount. It was accompanied with a marijuana card, and it was located in a capsule in the kitchen sink. But wouldn't it be normally if someone is trafficking marijuana and the cops knock on the door and they don't say, yes, I'm trafficking marijuana, wouldn't they normally say, oh, no, I have a small amount because I have this card and I have this medical condition? Couldn't the officers view that as additional corroboration of the tip? I don't think that that's additional corroboration. I think that is the kind of speculation that was talked about in the Underwood case. I mean, I think they're just – I mean, they're obviously looking for a drug distribution, and they're using it as an excuse for the fact that they're investigating a medical marijuana law violation. They also acknowledge that they have no knowledge or training in the enforcement of the medical marijuana laws and that they don't even write tickets for that. I don't think the card, to me, is that persuasive. I'm much more focused. For me, the card is not getting the government too far. But for me, I'm really focusing on that first part. I think, for example, if there's an uncorroborated or there's a tip that comes in to the manager that an individual in the building has a gun and that person is a felon. And so the manager says, you know what, I remember smelling gunshot red as a dude or some evidence of a gun when I walked by the apartment. So they knock on the door of the apartment, and the guy answers the door. And he says, yes, I do have a gun, but I see I have this card. I've been given restoration of rights in California to possess this firearm so I can still have this gun. It seems to me in that instance, the police would have probable cause or at least have good faith that they have probable cause to search for that gun. So if you could speak to the good faith issue, because I don't think that came up with counsel. To me, that's very important. The good faith issue, of course, the judge rejected that exception on the grounds that it was just a bare bones affidavit. And it seems to me that it very clearly was a bare bones affidavit because other than the canned phrases allowing them to search virtually anything, which is, as the court noted, facially invalid on its own basis, there was no specific information in the affidavit dealing with the things that they went there to search for. Now, in the affidavit. I don't want to interrupt you if you've got a sort of serious question, but I want to suggest that you need to talk to me because I was going to ask you these questions before my colleague went forward, and I'm glad he did. Why not going to the apartment and at least checking in at that apartment isn't enough to give some validity to the tip? Because the tip had nothing to do with the purpose for which they went to the apartment. What do you mean they went to the apartment? Because the office manager informed them that this unknown or mysterious person told her ten pounds of marijuana had been delivered there the previous night and could be found in the master bedroom closet, and the odor permeated from the apartment. That's not what they said in their affidavit, though. In their affidavit, they said, and I'm talking about excerpts of record five. Your client asks for consent to search the apartment to see if he was in compliance with the medical marijuana laws. When asked how much marijuana was in the apartment, Howard motioned to the jar that had been placed back on the fridge. But just a minute here. You're getting to a different point. My point is I know an anonymous tip is not something you can get any probable cause out of, but an anonymous tip that does have some, if you will, substantiation because you go to see if there's something in it that is valid can give you some probable cause, right? Yes. As I understand it, what happened here is that the office manager told the police what I've just said, an anonymous person had told her all this stuff. So what did they need to do to corroborate this tip from the manager? The only way I know to do it is to go to the place where they say this stuff is. And they did. They could have asked for more information from the apartment manager. They could have asked the apartment manager who the person was that gave her that tip. They could have asked what time of the day or night it was delivered, whether there had been other deliveries of this nature. There is all kinds of investigative work or interviews that could have been done prior to going into the apartment and getting a warrant. All right. I don't want to interrupt any further. If you could just speak to, we're running over here, but just briefly as to good faith why the officers could not, I think your answer is just under Leon, straight bare bones, just not enough there. Basically, that's the case. And then I started to read from the affidavit itself just the fact of how broad it is, how unparticularized, how it's obviously searching for things. Where are you looking, though? Excuse me, sir? Where is the record? With regard to the broadness of the affidavit, I'm looking at excerpts of record two, books, records, receipts, notes, ledgers, other papers relating to the transportation, ordering, purchasing, trafficking, possession of controlled substances. Records of travel, that's down on page nine and a half. Receipts and other items relating to domestic travel. Line 15, records of drug transactions, including lists of customers and suppliers, lists of expenses and payments, lists of dangerous drug prices. That would end on page. Counsel, real quick, were any of those types of items seized during the search? You mean after the warrant? Correct. Some of those things were. Are those the grounds for the, are those really at issue? I mean, it seems to me what's really at issue here is the gun. Are you contesting the seizure of these other items as well? Yes. There were, the judge suppressed evidence of guns, money, and the contraband. I mean, we encounter warrants that are overbrought at times, and there's the case, United States versus Temura, which tells us we're supposed to, if that's the case, if it's listed on the warrant and it's not seized, then it's no harm, no foul. If there's some debate about it, then you would go back to the district court to do an analysis. What's wrong with Mr. Johnson's proposal about doing that and going back and performing that overbreath analysis? Because the judge already did that analysis and specifically made conclusions about that. And that is discussed in the good faith exception to exclusionary rule, which begins on ER 220. I have no other questions. Thank you. Your Honors, I probably went over my time, and I don't know if the court wants to hear from me further. I have two points if the court will entertain them. The first being that, as Judge Owens mentioned, the district court, to get to your concern, Judge Smith, the district court did make findings that the materials that were seized were items that were listed with particularity in the warrant. So that issue has been covered. And secondly, we did argue in our brief, and the point should not be lost on the court, that the anonymous tip, at the very least, does inform the scope of the warrant. It at least makes a colorable argument that the warrant is a broader thing than merely finding a personal use amount on the refrigerator. And while the anonymous tip does not stand for probable cause alone, there is no case law saying it cannot inform otherwise probable cause that exists elsewhere, and we think that is the case law that is the basis for probable cause determination. I think there has to be some level of corroboration, which we think there was here, Your Honor. And just given the nature of the smoke and the several people that complained about it, that is a large issue, and it's a technical issue. But at the end of the day, it's at least a colorable issue. It's a colorable argument. And that's why the district court's conclusion that there was no colorable argument was really erroneous, and we would ask. Okay. If you've got the right card, it's legal. If you've got the right card, Your Honor. If you have the right card, Your Honor. If you have the right card. So he did have the right card. He did not. And it's not uncommon for people who have those cards to be smoking. Just the mere fact that you smell the odor of marijuana doesn't mean that the legal act was taken. I think in the ordinary case, that's true. But in the ordinary case, there aren't these other allegations that help inform the probable cause that was gathered at the doorstep. What other allegations? Does he have a criminal record as defendant? I'm not aware. There was no pre-sentence report prepared that I've seen, Your Honor. Well, did you run a bank on him? I'm sure they did. I haven't reviewed anything in this record. Billings Police run a bank on him. They did, yes. Huh? They did. Well, I know he's a prior felon because he's charged in this case as a felon in possession. Well, do you know that they knew that when they went to his clinic? I don't. I don't think the record states. Does it say that in the affidavit? It does not, Your Honor. It would have been a simple thing to check on. I'm sure it was, and I can't say either way if they did. I do know that there was at least a couple of hours after they went to the door when they went back to sort of check on him, check on things, and get the warrant ready. Maybe they did it during that time. I can't say. And thank you so much for the time.
judges: Pregerson, Smith, Owens